## GARNER et al. v. ANDERSON

No. 3472. Decided June 4, 1926. (248 P. 496.)

1. JUDGMENT—DECREE OR FINDINGS OF COURT THAT PERSONS NOT PARTIES TO ACTION HAD INTEREST IN DISPUTED WATER RIGHTS HELD OUTSIDE OF ISSUES AND REVERSIBLE ERROR. Where pleadings in action involving right to use waters of stream contained no allegation that rights of others, not parties to action, were involved, decree or findings of court that such others had interest in waters was outside issues and reversible error.[1]

---

[1] *Rosenthyne* v. *Matthews*, 51 Utah, 38, 168 P. 957; *Stookey* v. *MacKay*, 42 Utah, 1, 128 P. 580; *Cain* v. *Stewart*, 47 Utah, 160, 152 P. 465; *West* v. *Shurtliff*, 28 Utah, 337, 79 P. 180.

2. TENANCY IN COMMON. Interest of tenants in common are several, each tenant having right to alienate interest regardless of wishes of other tenants.[2]

3. TENANCY IN COMMON. Cotenant can make no agreement affecting interest of other cotenants in property jointly owned.[3]

4. EVIDENCE. Admission by plaintiffs, suing to restrain interference with water rights, respecting rights of cotenants, is not binding on cotenants not parties to action.

5. JUDGMENT. Judgment consented to by parties before court does not affect rights of others not parties to proceeding.

6. JOINT TENANCY—TENANCY IN COMMON—TENANT IN COMMON OR JOINT TENANT, GIVEN RIGHT TO JOINTLY OR SEVERALLY COMMENCE OR DEFEND ACTIONS, HELD NOT TO HAVE ANY ADDITIONAL RIGHT TO THAT ENJOYED PRIOR TO STATUTE (COMP. LAWS 1917, § 6512). Comp. Laws 1917, § 6512, gives joint tenant right to jointly or severally commence or defend action to protect his own or joint interests in controversy, but does not give an individual owning property in common or as joint tenant any other or additional right not enjoyed by tenant prior to its enactment.

7. WATERS AND WATER COURSES. Under Comp. Laws 1917, § 6512, court has no authority in water right suit to make findings and enter decree relating to rights of cotenants or joint tenants not before court.

8. TENANCY IN COMMON. Plaintiff, seeking to maintain action under Comp. Laws 1917, § 6510, for benefit of cotenants, must allege facts bringing parties within terms of statute.

9. WATERS AND WATER COURSES. In water right suit, defendant *held* entitled to know amount of water plaintiffs were entitled to use, and findings failing to prorate part of water to which each of plaintiffs were entitled are uncertain.

---

[2] *Rocky Mt. Stud Farm Co.* v. *Lunt*, 46 Utah, 299, 151 P. 521; *Wilcock* v. *Baker*, 65 Utah, 435, 238 P. 253; *Karren* v. *Rainey*, 30 Utah, 7, 88 P. 333; *Boley* v. *Allred*, 25 Utah, 402, 71 P. 869; *Manti City Sav. Bank* v. *Peterson*, 33 Utah, 209, 93 P. 566, 126 Am. St. Rep. 817.

[3] *Rocky Mt. Stud Farm Co.* v. *Lunt*, 46 Utah, 299, 151 P. 521; *Wilcock* v. *Baker*, 65 Utah, 435, 238 P. 253; *Karren* v. *Rainey*, 30 Utah, 7, 88 P. 333; *Boley* v. *Allred*, 25 Utah, 402, 71 P. 869; *Manti City Sav. Bank* v. *Peterson*, 33 Utah, 209, 93 P. 566, 126 Am. St. Rep. 817.

10. EVIDENCE—ONE EXPERIENCED IN IRRIGATING LAND MAY GIVE JUDGMENT AS TO QUANTITY OF WATER NECESSARY, BUT ONE HAVING NO KNOWLEDGE THEREOF CANNOT GIVE SUCH AN OPINION. One experienced in irrigating lands may give his judgment as to quantity of water necessary to irrigate particular lands, but witness, admitting that he had never measured water and that he had no knowledge of amount used in irrigation of particular lands, cannot give such opinion.

11. WATERS AND WATER COURSES—APPROPRIATORS OF WATER ACQUIRED ONLY RIGHT TO USE QUANTITY REASONABLY NECESSARY. Appropriators of water do not acquire title to corpus of water, but only acquire right to use such quantity as is reasonably necessary to mature crops and for other beneficial purposes, regardless of amount of water originally appropriated or amount theretofore used for purposes for which appropriations were made.[4]

12. WATERS AND WATER COURSES. In determining quantity of water plaintiffs are entitled to use, court must determine from competent evidence needs of plaintiff and reasonable quantity of water necessary therefor.

13. WATERS AND WATER COURSES. Evidence *held* to show that plaintiffs appropriated water from creek and continuously used waters for irrigation and other beneficial purposes.

14. WATERS AND WATER COURSES—WHETHER DEFENDANT MAY USE WATER AS AGAINST OTHER CLAIMANTS COULD NOT BE DETERMINED, UNLESS OTHER CLAIMANTS ARE MADE PARTY TO ACTION. Whether defendant is entitled to use of particular water as against other claimants could not be determined in action to restrain use of water, unless other claimants are made party to action and pleadings put in issue right to use of water.

15. WATERS AND WATER COURSES. Evidence *held* to establish plaintiff's right to water and defendant's wrongful interference therewith, but not to establish extent of defendant's right to use water.

16. WATERS AND WATER COURSES. Where defendant's use of waters of plaintiff was against plaintiff's wish, defendant acquired no right to plaintiff's water by its use.

---

[4] *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff*, 49 Utah, 569, 164 P. 856; *United States* v. *Caldwell*, 64 Utah, 490, 231 P. 434.

Appeal from District Court, Second District, Weber County; *A. E. Pratt,* Judge.

Action by Philip Garner and others against Adolph Anderson. Judgment for plaintiffs, and defendant appeals.

REVERSED and REMANDED, with directions.

*Stewart, Alexander & Budge,* of Salt Lake City, for appellants.

*E. T. Hulaniski* and *Joseph Chez,* both of Ogden, for respondent.

GIDEON, C. J.

The right to the use of the waters of a small mountain stream in Weber county is the subject of this litigation. The stream is known as Burch creek.

It is alleged in the complaint that plaintiffs (respondents here), their grantors and predecessors in interest, in the year 1853, constructed a dam and diverted the waters from

Corpus Juris-Cyc. References:

[1] Judgments 33 C. J. p. 1152 n. 22.
[2] Tenancy in Common 38 Cyc. p. 3 n. 1; p. 112 n. 37.
[3] Tenancy in Common 38 Cyc. p. 101 n. 71.
[4] Evidence 22 C. J. p. 351 n. 48.
[5] Judgments 34 C. J. p. 133 n. 38.
[6] Joint Tenancy 33 C. J. p. 915 n. 67; Tenancy in Common 38 Cyc. p. 118 n. 66.
[7] Waters 40 Cyc. p. 731 n. 9.
[8] Tenancy in Common 38 Cyc. p. 118 n. 66.
[9] Waters 40 Cyc. p. 734 n. 34.
[10] Evidence 22 C. J. p. 516 n. 59; p. 522 n. 84.
[11] Waters 40 Cyc. p. 716 n. 94.
[12] Waters 40 Cyc. p. 733 n. 25.
[13] Waters 40 Cyc. p. 734 n. 32.
[14] Waters 40 Cyc. p. 731 n. 10.
[15] Waters 40 Cyc. p. 734 n. 32.
[16] Waters 40 Cyc. p. 700 n. 79.

Burch creek to lands then occupied by plaintiffs and their predecessors in interest. The quantity of land is alleged to be approximately 200 acres. It is further alleged that, since such diversion, the waters have been used on the lands originally occupied by plaintiffs and their predecessors in interest for the purpose of raising crops, trees, and other vegetation, and for domestic purposes, and for watering stock; that the same was for a beneficial use, and the amount of water so appropriated was necessary for the purposes claimed; that the plaintiffs, their grantors and predecessors in interest, constructed lateral ditches to convey the waters from the main ditch to the several pieces of land occupied and owned by plaintiffs and their predecessors in interest. It is then alleged that the Uinta Dairy Company, one of the plaintiffs, is the owner of 50 acres of land; that William Jenkins is the owner of 14 acres; that Philip Garner is the owner of 45 acres; that Lottie M. Stephens is the owner of 200 acres; and that all of these lands are located in Weber county and are lands upon which the waters formerly appropriated from Burch creek were used in irrigating the same. It is also alleged that, for the purpose of storing water for the more economical use of the same, plaintiffs constructed eight reservoirs upon their premises.

The main ditch conveying the water from the creek is known and referred to as the Garner Ditch. The complaint charges the defendant with entering upon this ditch, destroying the embankments and taking the water originally belonging to plaintiffs. The prayer of the complaint is that defendant be adjudged to have no estate or interest whatever in the waters of said Burch creek or any right to the use thereof, or of the ditch conveying the water, and that the plaintiffs be adjudged to be the owners and to have the right to the use of the waters of the whole of said creek, and that defendant be enjoined from in any way interfering with the right.

In the answer, defendant, upon information and belief, denies the allegations of the complaint. As an affirmative

defense, it is alleged that the defendant is the owner of about 320 acres of land located in the vicinity of Burch creek; that the land is arid and requires water for irrigation. It is alleged that defendant acquired title to this land in the years 1906 and 1907. It is further alleged that the predecessors in interest of defendant were the original appropriators of sufficient of the waters of Burch creek to irrigate and mature crops on part of defendant's land, to wit, 25 acres of meadow land, 75 acres of alfalfa and grain, and 11 acres of garden produce; that defendant, ever since he acquired title to the property, in each and every year during the irrigation season, has grown hay, grain, and garden produce on an average of 25 acres, alfalfa and grain on 75 acres, and garden produce on 11 acres; that in such irrigation he has used and applied sufficient water of Burch creek from the Garner ditch openly, notoriously, peacefully, and adversely through each irrigation season until restrained by the order issued in this action.

A supplemental complaint was filed and answered, but these additional pleadings in no way change the issues involved in the litigation.

One of the errors assigned is that the findings of the court and the decree are not within the issues made by the pleadings. We have therefore deemed it advisable to state somewhat in detail the issues made by the pleadings.

The defendant, Anderson, appeals from the judgment entered in the action. The court found, among other things, that the plaintiffs, naming then—

"together with others who are not parties to this suit are the owners and appropriators as tenants in common and entitled to appropriate and divert by means of the Garner ditch hereinafter mentioned 6½ second feet flow of the waters of Burch creek, a natural stream of water issuing from Burch creek canyon southeast of Ogden City for the irrigation of their lands, maturing of crops thereon, and for domestic and culinary purposes during the entire irrigation season of each and every year except one-half of the flow of the water in said Garner ditch on every ninth day up to and including the 20th day of June in each year."

The court further found that the defendant, Anderson, was the owner and appropriator and entitled to the use on every ninth day during the irrigation season up to and including the 20th day of June of one-half of the flow of the water in the ditch, namely, 3¼ second feet, for the irrigation of his lands lying south of the Garner ditch. There is a further finding to the effect that the Garner ditch was constructed in the year 1854 by the predecessors in interest of the plaintiffs and others not parties to the suit; that the ditch intercepted the flow of Burch creek near the mouth of the canyon and ran in a northwesterly direction and across part of the lands now owned by defendant and which were at that time owned by the predecessors in interest of defendant; that a dam was constructed across the creek by the predecessors in interest of plaintiffs and others, who appropriated and diverted 6½ second feet of the flow of the waters of said creek; that, ever since that time, "and until the transfer of their interests and rights to the plaintiffs and others not parties to this suit, the said predecessors in interest of said plaintiffs have appropriated and diverted, under claim of right to do so, said 6½ second feet of the flow of the waters of said creek and conducted the same to said ditch and reservoirs and laterals made by them, and used the same on the lands owned by them lying under said ditch." It was also found that, since the year 1854 each and every year except one-half of the flow on every ninth day up to and including June 20th the plaintiffs or their predecessors in interest and others not parties to the suit used said waters without hindrance or interference by the defendant or his predecessors in interest except on sundry and various occasions the said defendant and his predecessors in interest have used said waters without right and against the will of the plaintiffs. There are other findings of fact that the lands of both plaintiffs and defendant are arid in character and require the use of water for the purpose of maturing crops; that during all of the time since the original appropriation there has been a surplus of water from Burch creek in addition

to the appropriations made by plaintiffs and defendant in each and every year until about July 1st; that this surplus water has been used through the Garner ditch and other ditches from Burch creek by others not parties to this action. The court expressly found, however, that the rights of the parties to this suit to the use of this surplus water could not be adjudicated in this action, for the reason that other parties interested were not parties to the action. The court also found that for several years last past, and particularly in the year 1916 and since that time, the defendant has claimed the right to use a greater quantity of the flow of the waters of Burch creek through the Garner ditch than was theretofore appropriated and diverted by him of his predecessors in interest; that said claim is adverse to the claims of plaintiffs.

In the decree it is adjudged that the plaintiffs, naming them, together with others not parties to the action, are the owners as tenants in common of 6½ second feet of the flow of the waters of Burch creek during each and every year except the 3¼ second feet found to belong to the defendant which he is permitted to use every ninth day until June 20th of each year; that plaintiffs and others not parties to the suit as tenants in common are entitled to divert the said 6½ second feet of water through and by means of the Garner ditch and to conduct the same into their reservoirs or into laterals for the irrigation of their lands, maturing crops, and for domestic and other beneficial purposes, and the title to the said 6½ second feet is thereby confirmed and quieted in them and the defendant and all persons claiming through him are forever enjoined from in any way claiming or interfering with plaintiffs and others not parties to the suit using the said 6½ second feet.

The findings and the judgment based on the findings are assailed by the assignment of errors principally upon two grounds: (1) That the effort of the court to adjudicate the rights of persons not parties to the action is beyond the jurisdiction or power of the court, and, further, that any

finding or decree respecting the rights of others not parties to the action is not within the issues made by the pleadings: (2) on the ground that the findings and decree are uncertain and indefinite in various matters specified in the assignment.

It conclusively appears from the record, and the court so found, that about the year 1853 or 1854 the predecessors of plaintiffs and others appropriated waters from Burch creek and applied the same to a beneficial use. A Mr. Critchlow was a witness for plaintiffs. At the time of testifying he was 83 years of age. His testimony was to the effect that the appropriation of the waters of Burch creek was by Philip Garner and sons and one Moses Clark, representing what he termed the southeast part, that the next division was by John Stephens and sons, and the lower division by L. J. Herrick, the witness' father, and one Gilman Merrill. The substance of the testimony of this witness is nowhere disputed. The ditch ran in a northwesterly direction, passed through the lands of the several plaintiffs, and carried water to the appropriators' lands. The water was divided into three parts. The Garner and Clark claim was entitled to one third, the Stephens claim to one-third, and the lower claim or division by Herrick, Critchlow, and Merrill one-third. From the beginning of plaintiffs' rights to use and the use of this water, it has been the custom during the early irrigation season for each claimant to take one-third of the stream and apply it to the irrigation of their individual lands. Later in the season, when the flow of the stream became what is designated "normal," the water was used in turns, each of the claimants using it for a period of two days.

In or about the year 1890 much, if not all, of the lands occupied and claimed by the lower users, especially those of Critchlow and Herrick, were incorporated within the boundaries of Ogden City. These lands were cut up into subdivisions, and lots were sold to various owners, some with the right to the use of water and others

apparently not. These lot owners are some of the "other parties," not before the court, referred to in the findings and decree. There is no allegation in the complaint nor in the answer that there are, in addition to the parties to the action, others who are in any way interested in the waters of Burch creek. There is no allegation or suggestion in the pleadings that the rights of others not parties to the action were in any way involved or to be determined by the decree of the court in this action. The plaintiffs in the complaint asserted the right to the use of the entire stream of Burch creek. The defendant denied the rights of the plaintiffs. In the affirmative allegations of the answer there is no intimation or claim that others besides himself and plaintiffs have any right or claim to the waters of Burch creek or in the waters flowing through the Garner ditch. Any effort, therefore, on the part of the court to determine by the decree or findings that others not parties to the action had an interest in the waters is without the issues made by the pleadings, and that fact alone must work a reversal of the judgment. *Rosenthyne* v. *Matthews,* 51 Utah, 38, 168 P. 957; *Stookey* v. *MacKay,* 42 Utah, 1, 128 P. 580; *Cain* v. *Stewart,* 47 Utah, 160, 152 P. 465; *West* v. *Shurtliff,* 28 Utah, 337, 79 P. 180.

The theory of the court in assuming to adjudicate the rights of others not parties to the action in the waters of this creek does not appear from the record. Counsel for plaintiffs, in their brief, do not attempt to enlighten the court upon this point. If it were the theory that 2-5 plaintiffs and others not parties to the action were entitled to the use of the waters as tenants in common, such fact, in the absence of pleadings and in the absence of the parties, would deny the court the right to make such adjudication. The interests of tenants in common are several. Each tenant has the unquestionable right to alienate his interests or to make any disposition of such interests as he may choose, regardless of the wishes of the other tenants or joint owners. *Rocky Mt. Stud Farm Co.* v. *Lunt et al.,*

46 Utah, 299, 151 P. 521; *Wilcock* v. *Baker*, 65 Utah, 435, 238 P. 253; *Karren* v. *Rainey*, 30 Utah, 7, 88 P. 333; *Boley* v. *Allred*, 25 Utah, 402, 71 P. 869; *Manti City Sav. Bank* v. *Peterson*, 33 Utah, 209, 93 P. 566, 126 Am. St. Rep. 817. One cotenant can make no agreement affecting the interests of the other cotenants in the property jointly owned. Cases, supra. Any admission made by the plaintiffs in this action respecting the rights of other cotenants, if there are others, would not be binding upon the others not parties to the action. Any judgment consented to by the parties before the court would in no way affect the rights of the others not parties to this proceeding.

It is suggested that the plaintiffs rely upon Comp. Laws Utah 1917, § 6512, as giving the court authority to make findings and enter a decree relating to the   6-7 rights of cotenants or joint tenants not before the court. That section is as follows:

"All persons holding as tenants in common or as joint tenants, or any number less than all, may jointly or severally commence or defend any civil action or proceeding for the enforcement or protection of the rights of such party. In all cases one tenant in common or joint tenant can sue his cotenant."

That section does not give to an individual owning property as a tenant in common or as a joint tenant any other or additional right not enjoyed by such tenant prior to its enactment. All it does give to a joint tenant is   8 the right to jointly or severally commence or defend his own or joint interests in the matter in controversy. If the right be conceded—which we do not concede—of one cotenant or less than all to prosecute or defend the interests of tenants not before the court, the rights of such absent tenants must of necessity be made an issue in some form by the pleadings. No such issue was tendered in the complaint or answer in this case. If plaintiffs seek to maintain the action under the provisions of section 6510 of the Code, there should and must be allegations in the pleadings setting forth

a state of facts bringing the parties within the terms of that section. *Carey* v. *Brown*, 58 Cal. 180.

The relief sought by the plaintiffs is to restrain the defendant from using any of the waters of Burch creek and especially the waters running through the Garner ditch to which they are entitled. The court recognized that the defendant had the right to use water carried through the Garner ditch. The defendant was entitled to know just what amount of water plaintiffs were entitled to use. Such facts were necessary for the regulation of his conduct in taking water from that ditch, so that he might not be guilty of contempt of the orders of the court. He had no way of being advised as to just what part of the $6\frac{1}{2}$ second feet of water the plaintiffs, or others not parties to the action, were entitled to use. No finding is made as to what pro rata or part of the $6\frac{1}{2}$ second feet each of the plaintiffs is entitled to use or what part others not parties to the action are entitled to. The findings and decree in that respect are uncertain. It is neither possible for the plaintiffs to definitely say just what their rights in the waters are nor for the defendant to say what his rights are. Neither is there any reliable evidence in the record upon which the court could base a finding as to the actual quantity of water resonably necessary for the purpose for which it was appropriated. There is some opinion evidence by the defendant and other witnesses, but admittedly neither of the witnesses testifying was qualified to give an opinion as to the quantity of water necessary to irrigate either the lands of the plaintiffs or the lands of the defendant.

We do not wish to be understood as holding, nor do we hold, that a farmer or other who has had experience in actually irrigating lands cannot give his judgment, if he has any judgment, as to the quantity of water necessary to irrigate particular lands. The difficulty with the witnesses in this case is that they stated they had never measured water, did not know or claim to know the actual amount of water used in the irrigation of their individual

lands or the lands of other parties to the action. At most it was a mere guess as to the quantity of water necessary for the irrigation of either respondents' or appellant's lands.

It has frequently been determined by this and other courts of this western arid region that the appropriators of water do not acquire title to the corpus of the water but only acquire a right to use such quantity as is reason- 11-12 ably necessary to mature crops and for other beneficial purposes. *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff,* 49 Utah, 569, 164 P. 856; *United States* v. *Caldwell,* 64 Utah, 490, 231 P. 434. That is true, regardless of the amount of water originally appropriated by the claimants and also true regardless of the amount of water theretofore used for the purposes for which the appropriations were made. It is therefore essential in determining what quantity of water plaintiffs are entitled to use that the court determine from competent evidence just what their needs are and what would constitute a reasonable quantity to be used for the purposes for which the plaintiffs are entitled to use the water.

It does not satisfactorily appear in the record as to just what volume of water the Garner ditch will carry or what it carried when originally constructed. It does, however, in our judgment, conclusively appear that the plaintiffs and their predecessors in interest made appropriations of waters from Burch creek; that the plaintiffs and their 13 predecessors in interest have continuously since the original appropriations used the waters for irrigation and other beneficial purposes. The fact that appropriations of the waters of Burch creek were made by the plaintiffs and their predecessors in interest in or about the years 1853 and 1854 need not be further established, and the findings of the court to that extent are approved. And the further fact that they conveyed said waters through the Garner ditch to their respective properties and applied the same to a beneficial use need not be further established, and the fnidings of the court to that extent are also approved.

The evidence discloses that this stream, like all other streams of this nature in this mountainous country, is fed from melting snows. In the spring and early summer there is a larger volume of water in the stream than there is in the later irrigation season. It also appears that in an effort to use this flood water other ditches have been taken from the creek, both above and below the point where the Garner ditch intercepts the stream. One of these ditches is known as the Lewis or Lewis-Farrell ditch. That ditch is taken out a few feet above the Garner ditch and carries water to the northwest, and with the flood waters through that ditch there is some evidence that the defendant and his predecessors in interest have irrigated approximately 15 acres of land in alfalfa. This land lies above and northwest of the Garner ditch. If I understand the lay of the country, this land cannot be irrigated from the Garner ditch. Apparently by the decree the defendant is enjoined from using any of that water. Whether the defendant is entitled to the use of that water as against other claimants is not and necessarily cannot be determined in this action unless the other claimants are made parties to the action and the pleadings are so drawn as to make the right to the use of these waters an issue. If it is the desire of the parties, either plaintiffs or defendant, to have the rights of others not parties to the action to the use of these flood waters or the use of the waters in the later irrigation season determined and litigated, then such other persons ought to be and can be made parties to the action.

There is not sufficient data in the record from or by which this court can determine the rights of the plaintiffs or the defendant in the waters of this creek. The number of acres irrigated by the plaintiffs and which they have a right to irrigate is not very conclusively proven. There is no map or other record from which or by which a reviewing court can get an intelligent idea of the acreage or its location to other parts of the lands claimed by the plaintiffs or by "others not parties to the action."

We do not deem it advisable or necessary to further detail the evidence found in this voluminous record. Plaintiffs' rights to the water, as indicated, are established, but the quantity of water to which they are entitled is not established. That the defendant wrongfully interfered with the plaintiffs' rights is proven beyond much controversy, and the finding of the court on that point is approved. That any use made of the waters by the defendant to which plaintiffs are entitled was against the wish of the plaintiffs is also established. The defendant has therefore acquired no right to any of the plaintiffs' water by the use of the same. The extent of the defendant's right to the use of the flood waters is not determined and cannot be determined under the evidence or under the issues made in the pleadings and without the others who claim a right to the use of the same waters are made parties to the action.

The judgment of the trial court is reversed, and its findings except as herein indicated are set aside. The cause is remanded to the district court of Weber county, with directions to permit the parties, if they so desire, to amend their pleadings, to make others parties to the action, and to grant a new trial. Neither plaintiffs nor defendant will be awarded costs on this appeal.

THURMAN, FRICK, CHERRY, and STRAUP, JJ., concur.